IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 24, 2006 Session

## JERRY D. ECKLER v. DR. LEE ALLEN, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-003361-04      Karen Williams, Judge**

---

**No. W2005-02501-COA-R3-CV - Filed November 29, 2006**

---

This is a medical malpractice action in which Plaintiff alleges Defendant physician failed to obtain informed consent.  The trial court awarded Defendants summary judgment upon finding that Plaintiff's amended expert affidavit failed to comply with Tennessee Code Annotated § 29-26-115(a)(1) and that Plaintiff had failed to file the amended affidavit by the deadline imposed by the court.  We affirm summary judgment for Defendant under § 29-26-115(a)(1).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Scottie Wilkes, Memphis, Tennessee, for the appellant, Jerry D. Eckler.

J. Kimbrough Johnson and Elizabeth T. Collins, Memphis, Tennessee, for the appellees, Dr. Lee Allen and Memphis Dermatology Clinic.

### OPINION

        This is a medical malpractice action in which Plaintiff Jerry D. Eckler (Mr. Eckler) alleged Defendants Lee Allen, M.D. (Dr. Allen) and Memphis Dermatology Clinic ("Memphis Dermatology"; collectively, Defendants) failed to obtain his informed consent before performing Mohs Micrographic surgery to biopsy cells on Mr. Eckler's nose for basal cell carcinoma.  The trial court determined Mr. Eckler's expert's affidavit failed to comply with the requirements of the "locality rule" applicable to medical malpractice actions under Tennessee Code Annotated § 29-26-115(a)(1), and that Mr. Eckler failed to comply with the court's imposed deadline to submit an amended expert affidavit.  The trial court accordingly granted Defendants' motion for summary judgment.  We affirm.

This dispute arises from a Mohs micrographic surgical procedure performed by Dr. Allen on Mr. Eckler's nose. On June 13, 2003, Mr. Eckler, then sixty-four years of age, consulted with Dr. Allen regarding possible basal cell carcinoma on Mr. Eckler's nose. Mr. Eckler was referred to Dr. Allen by Dr. Janet Knight. Dr. Allen performed Mohs Micrographics surgery on Mr. Eckler's nose. The procedure resulted in a wound of three centimeters.

On June 11, 2004, Mr. Eckler filed a complaint against Dr. Allen and the Memphis Dermatology Clinic, alleging that Dr. Allen had not discussed Mr. Eckler's condition, alternative treatment options, risks, or potentially necessary additional procedures. He alleged that, after taking Mr. Eckler's medical history, "Dr. Allen immediately deaden[ed] Plaintiff's nose and began [M]ohs micrographics surgery." Mr. Eckler also asserted that he would not have consented to the surgery if he had been advised of alternative procedures. He prayed for compensatory damages in the amount of $300,000 for pain and suffering, future medical services related to plastic surgery, and future medial expenses.

Defendants answered on July 15, denying all allegations of negligence and asserting Mr. Eckler's damages were caused by an independent and intervening cause. On November 22, 2004, Defendants moved for summary judgment. Defendants supported their motion with a statement of undisputed facts and Dr. Allen's expert affidavit. In their statement of undisputed facts and memorandum of law, and in Dr. Allen's affidavit, Defendants asserted that Mr. Eckler was advised that the lesion on his nose would be biopsied in order to identify the type of cancer; that Mr. Eckler was given a brochure explaining Mohs micrographic surgery, which involves removing layers of tissue until the cancerous tissue has been removed; that Mr. Eckler and his wife were given instructions on how to care for and clean the wound; and that Dr. Allen complied with the recognized standard of care for dermatologists in the community in the rendering of care and treatment, including obtaining informed consent. Defendants further asserted Mr. Eckler sustained no damages or injuries which would not otherwise have occurred. It is undisputed that informed consent was not obtained in writing.

The trial court granted Mr. Eckler an extension of time to file his response to Defendants' motion until January 7, 2005. Mr. Eckler filed his response and statement of facts on January 5, attaching Dr. Conway Huang's (Dr. Huang's) expert affidavit. The trial court heard the motion on June 10, 2005, and determined that Dr. Huang's affidavit did not meet the requirements of an expert witness under Tennessee Code Annotated § 29-26-115(a)(1) or this Court's opinion in *Johnson v. Pratt*, No. W2003-02110-COA-R3-CV, 2005 WL 1364636 (Tenn. Ct. App. June 9, 2005) (*no perm. app. filed*). Counsel for Mr. Eckler conceded that the affidavit was not sufficient under *Johnson*, and the trial court granted Mr. Eckler an extension until July 12, 2005, to file a supplemental affidavit. Mr. Eckler submitted Dr. Huang's amended affidavit to the trial court on July 12, 2005. It was stamped received and initialed by the court's law clerk, but was not filed in the clerk's office until after July 12.

The trial court again heard Defendants' motion for summary judgment on July 29. The court determined that the amended affidavit also failed to meet the statutory requirements of an expert

witness under Tennessee Code Annotated § 29-26-115(a)(1). The trial court additionally determined that the amended affidavit had not been timely filed where it was stamped "received" and initialed by the court's law clerk on July 12, but not stamped "filed" with the court clerk's office until after the July 12 deadline. On September 21, 2005, the trial court granted Defendants' motion for summary judgment, and Mr. Eckler filed a timely notice of appeal to this Court.

## *Issues Presented*

Mr. Eckler raises the following issues for our review

(1)    Whether the [trial] court erred in its ruling that [Plaintiff's] expert does not qualify as a medical expert under Tennessee law.

(2)    Whether the [trial] court abused [its] discretion when it held that Dr. Huang's amended affidavit was not filed within time allowed.

## *Standard of Review*

Summary judgment is appropriate only when the moving party can demonstrate that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

## *Analysis*

We turn first to the trial court's determination that Mr. Eckler failed to file Dr. Huang's amended affidavit in the time allocated by the trial court. Clearly, trial judges have the right to set and enforce deadlines. *Kenyon v. Handal*, 122 S.W.3d 743, 751 (Tenn. Ct. App. 2003). And this case illustrates the perils of waiting until the last possible day to comply with a court's order. However, Defendants do not allege that Mr. Eckler failed to deliver Dr. Huang's amended affidavit to the trial court on July 12, or that the affidavit was not mailed to counsel for Dr. Allen on the same day. Further, that the affidavit was received by the court but not stamped "filed" on July 12 resulted in no prejudice to Defendants. Accordingly, we have concluded that the trial court erred in determining Mr. Eckler failed to comply with the trial court's order.[1]

We next turn to whether the trial court erred in determining that Dr. Huang's amended affidavit failed to comply with the requirements of Tennessee Code Annotated § 29-26-115(a). The subsection provides:

---

[1]We observe that, interestingly, many of the documents in the technical record now before this Court are not stamped "filed" and dated by the court clerk. These documents include Defendants' motion for summary judgment, statement of undisputed facts, and Dr. Allen's expert affidavit.

(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a) (2000). The trial court ruled that Dr. Huang failed to comply with § 29-26-115(a) where his affidavit failed to demonstrate that he was "knowledgeable of the standard of care in Memphis, Shelby County, Tennessee or a similar medical community at the time of the alleged malpractice."[2]

Our disposition of this issue requires inquiry into the fundamental question of what elements or language must be included in the expert's affidavit at the summary judgment stage of litigation in order to comply with the section's requirement that the expert has knowledge of the standard of care in the locality where the defendant physician practiced when the alleged malpractice occurred. Rigid adherence to the statutory language is not required, although this Court historically has urged legal counsel to "couch their medical experts' affidavits in the language of [Tennessee Code Annotated] 29-26-115." *Kenyon*, 122 S.W.3d at 759. Rather, the court must examine the substance of the statements made in the affidavit to determine whether the affidavit complies with the statutory requisites. *Id.* Generally, decisions regarding an expert's qualifications or competency are within the trial court's sound discretion. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). Accordingly, we review these determinations under the abuse of discretion standard. *Robinson v. LeCorps*, 83 S.W.3d 718, 725 (Tenn. 2002). When our review arises from a trial court's award of summary judgment, however, we must view statements made in the expert's affidavit in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Kenyon*, 122 S.W.3d at 759.

In his affidavit, Dr. Huang stated:

1. I, Conway C. Huang, am an Assistant Professor at the University of Alabama at Birmingham. I am the Director of Dermatologic Surgery and Cutaneous Laser Surgery. My curriculum vitae is attached.

---

[2] At oral argument, counsel for Dr. Allen asserted Dr. Huang's affidavit must fail under the statute for reasons additional to the locality rule. We decline to address these arguments, however, as the trial court clearly awarded Defendants summary judgment under only the locality rule provision of the statute.

2. I am familiar with the standard of care for Mohs micrographic Surgeons in communities similar to Memphis, TN.

3. I have become familiar with the standards of care in the Memphis community and throughout the State of Tennessee.

4. I have discussed the standard of care for obtaining informed consent with all the fellowship trained Mohs surgeons in Tennessee. "Fellowship trained" refers to Mohs surgeons who have specialized training in Mohs micrographic surgery for 1-2 years after completing a dermatology or related residency.

5. These fellowships are accredited by the American College of Mohs Micrographic Surgery and Cutaneous Oncology. In the past two years, many of these fellowships have also become accredited by the American Board of Medical Specialties under the newly recognized specialty of Procedural Dermatology.

6. There are sixteen (16) Mohs surgeons in Tennessee including the Defendant. Seven of the Mohs surgeons are partners with the Defendant. Therefore they were not consulted.

7. Besides Dr. Allen and his partners, I consulted with Dr. Malika Tuli of Memphis, Tennessee and was advised that written and oral informed consent are obtained in the Memphis, Tennessee community.

8. I also consulted with the remaining six Mohs surgeons in Tennessee and was advised that the written and oral informed consent are obtained in their community. See attached spreadsheet of my investigation.

9. As I previously stated in my original affidavit, I reviewed the medical records of Jerry Eckler from June 13, 2003, June 20, 2003 and June 30, 2003. These records included clinical notes and photos. There is no written evidence that an informed consent was obtained from Mr. Eckler. Informed consent may have been verbally obtained, but there is no written documentation that would substantiate that is was obtained (see attached affidavit).

10. Based on my investigation Dr. Allen failed to obtain proper informed consent according to the standard of care for Memphis, TN. There is no evidence that Mr. Eckler understood the procedure, disease, treatment options, risks and benefits of those treatment options.

The spreadsheet illustrating the results of Dr. Huang's survey of Tennessee Mohs micrograhic surgeons attached to his affidavit indicated that the surgeons questioned obtained written and oral

consent. Dr. Huang's attached curriculum vitae indicated specialized knowledge of dermatology, dermatologic surgery, and cutaneous laser surgery.

Tennessee Code Annotated § 29-26-115(a)(1) places the burden on the plaintiff in a medical malpractice action to demonstrate by expert evidence the standard of acceptable professional care in the community where the defendant physician practices or in a similar community. *Robinson*, 83 S.W.3d at 724. Thus, the medical expert must demonstrate that he has knowledge of the standard of care applicable in the defendant's community or in a community which the expert demonstrates is similar to that of the defendant. *Id.* Additionally, as we reiterated in *Johnson*, merely asserting familiarity with the local standard of care is not sufficient to meet the statutory requirements. *Johnson v. Pratt*, No. W2003-02110-COA-R3-CV, 2005 WL 1364636, at *7 (Tenn. Ct. App. June 9, 2005) (*no perm. app. filed*) (citing *Mabon v. Jackson-Madison County Gen. Hosp.*, 968 S.W.2d 826, 831 (Tenn. Ct. App.1997). Rather, the expert also must present facts demonstrating how he or she has obtained knowledge of the standard of professional care in either the community in which the defendant physician practices or in a similar community. *Id.* (citing *Spangler v. East Tenn. Baptist Hosp.*, No. E1999-01501-COA-R3-CV, 2000 WL 222543, at *1-2 (Tenn. Ct. App. Feb. 28, 2000), *perm. app. denied* (Tenn. Sept. 11, 2000))).

Dr. Huang's affidavit and curriculum vitae demonstrate that he has expert knowledge of the specialized field of dermatological surgery. They also contain sufficient evidence to suggest knowledge of the standard of care in the community of Birmingham, Alabama. However, there is nothing in Dr. Huang's affidavit or supporting documents to demonstrate or suggest that Birmingham, Alabama, is a community similar to Memphis, Tennessee.

We turn next, therefore, to whether Dr. Huang demonstrated knowledge of the standard of care in the Memphis community for the purposes of § 29-26-115(a)(1). In his affidavit, Dr. Huang clearly stated that he was familiar with the standard of care in the Memphis community. Dr. Huang's affidavit and attached spreadsheet also demonstrate that Dr. Huang obtained knowledge of the applicable standard of care by surveying physicians in Tennessee who practice within the specialized field of Mohs micrographic surgery, including the one Mohs micrographics surgeon in Memphis who is not a partner of Dr. Allen.

As we noted in *Johnson*, however, evidence of knowledge of a national, regional, or even state-wide standard of professional practices does not suffice under the locality rule set-out in § 29-26-115(a). *Id.* at *8 (citations omitted). Our inquiry becomes, therefore, whether knowledge obtained by surveying physicians who practice in the specialized field in the defendant's community is sufficient under the statute, or whether the statute demands personal, firsthand knowledge.

In *Johnson*, a case also arising from the alleged failure of the defendant, an orthopedic surgeon, to obtain the plaintiff patient's informed consent, we affirmed summary judgment awarded in favor of defendant where plaintiff's expert, a radiologist, failed to demonstrate knowledge of the standard of care applicable to orthopedic surgeons in the Memphis community. *Id.* at *8-9. The expert's affidavit in *Johnson* failed to comply with § 29-26-115 because it demonstrated neither

knowledge of the standard of care applicable to orthopedic surgeons nor personal knowledge of the standard of care applicable to orthopedic surgeons practicing in Memphis. *Id.* The affidavit also failed to demonstrate that the expert had personal knowledge of the standard of care applicable to orthopedic surgeons in a community similar to Memphis. *Id.* Similarly, in *Travis v. Ferraraccio*, we upheld the exclusion of an expert who failed to demonstrate either "firsthand knowledge" of the standard of professional practice in the defendant's community, or that the communities which the expert asserted were similar were, in fact, similar to that of the defendant. *Travis v. Ferraraccio*, No M2003-00916-COA-R3-CV, 2005 WL 2277589, at * 7-8 (Tenn. Ct. App. Sept. 19, 2005) (*no perm. app. filed*).

In the case at bar, although Dr. Huang's affidavit and supporting attached documents demonstrated that he has personal knowledge of the standard of care applicable to the specialized field in Birmingham and, arguably, on a national level, there is nothing to indicate personal knowledge of the standard of care applicable in Memphis. Personal is "done in person without the intervention of another." *Webster's Ninth New Collegiate Dictionary*, 877 (1986). Personal knowledge is "first-hand" knowledge. *See State v. Howard*, 926 S.W.2d 579, 585 (Tenn. Crim. App. 1996). Dr. Huang's familiarity with the standard of care in Memphis was garnered only through interviewing other physicians in the community; it was not based on any firsthand experience.

Defendants assert that knowledge gained by surveying other physicians and not by personal or firsthand experience is not sufficient under § 29-26-115(a)(1). They submit that a non-expert could survey physicians in a community if the mere collection of data could constitute knowledge. Defendants assert the statute requires personal, firsthand, or direct knowledge of the applicable standard by an expert who practices in the community or in a similar community. We agree.

Knowledge of or familiarity with the standard of care, particularly with respect to informed consent, does not require that the plaintiff's expert practice in the same specialized field as the defendant. *Johnson*, 2005 WL 136436, at *9. It does, however, require that the expert be sufficiently familiar with the standard of care in the specialty to provide relevant testimony. *Id.* Under Tennessee Code Annotated § 29-26-115(a)(1), knowledge of the applicable standard of care must be either firsthand knowledge of the standard of care by one who practices in the community in which the defendant practices, or firsthand knowledge by one who practices in a community demonstrated to be similar to that of the defendant.

### *Holding*

In light of the foregoing, we reverse the trial court's determination that Mr. Eckler failed to submit Dr. Huang's amended affidavit to the trial court within the time ordered by the court. However, we must affirm the trial court's judgment that Dr. Huang's amended affidavit failed to meet the requirements of the "locality rule" provided by Tennessee Code Annotated § 29-26-115(a)(1). Despite the specialized nature of Mohs surgery and the relatively static status of the informed consent doctrine, Dr. Huang's affidavit simply failed to demonstrate that Dr. Huang had personal or firsthand knowledge of the standard of care in the Memphis/Shelby County

community. He also failed to demonstrate that Birmingham, Alabama, a community of which Dr. Huang has firsthand knowledge, is a community similar to Memphis. Accordingly, Dr. Huang's amended affidavit did not cure the deficiencies of his first affidavit.

As the Tennessee Supreme Court recently observed while encouraging the General Assembly to reconsider the locality rule, in many cases and particularly in cases that involve a board-certified specialty, such as the case now before us, the national standard is representative of the local standard. *Robinson v. LeCorps*, 83 S.W.3d 718, 723-24 (Tenn. 2002). In such cases, there is no reasonable basis to suggest that the standard of care in Tennessee would not be at least as stringent as the national standard. However, despite this Court's suggestion that the locality rule should be relegated to "the ash heap of history," particularly in cases where it results in "hairsplitting" determinations, *e.g., Carpenter v. Klepper*, No. M2004-02951-COA-R3-CV, 2006 WL 684589, at *5 (Tenn. Ct. App. March 16, 2006) *perm. app. denied* (Tenn. Oct. 2, 1006), this Court is constrained by the statutory requirements provided by the General Assembly at § 29-26-115(a)(1).

Judgment awarding summary judgment to Defendants is affirmed. Costs of this appeal are taxed to the Appellant, Jerry D. Eckler, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-8-